Ann E. Menasche, State Bar No. 74774
ann.menasche@disabilityrightsca.org
Nichole Marie Mendoza, State Bar No. 276632
Nichole.mendoza@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
530 B Street, Suite 400
San Diego, CA 92101
Phone: (619) 814-8524
Fax: (619) 239-7906


Ben Conway, State Bar No. 246410
ben.conway@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
350 South Bixel Street, Suite 290
Los Angeles, CA 90017
Phone: (213) 213-8000
Fax (213) 213-8001
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA DUARTE,<br><br>        Plaintiff,<br><br>   vs.<br><br>MISSION FEDERAL CREDIT UNION,<br><br>       Defendant. | Case No.:  19-cv-1441 AJB KSC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY JUDICIAL PROCEEDINGS**<br><br>**Judge: Hon. Anthony J. Battaglia**<br><br>**Hearing Date:  January 2, 2020**<br>**Hearing Time: 2:00 p.m.**<br>**Courtroom:     4A**<br><br>**Complaint filed: July 31, 2019** |

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................5

II. STATEMENT OF FACTS ...........................................................................5

   A. Background .............................................................................................5

   B. Provisions of the Agreement...................................................................7

   C. Arbitration costs and procedures versus Federal litigation...............8

III. ARGUMENT .............................................................................................9

   A. An Arbitration Agreement may be invalidated on the same basis as other contracts. .....................................................................................................9

   B. There was no mutual assent and therefore no valid contract to arbitrate was ever formed between MFCU and Ms. Duarte .................................10

   C. Even if a contract existed to arbitrate, it is both procedurally and substantively unconscionable and cannot be enforced ..........................14

      1. The Agreement is procedurally unconscionable to a high degree..........15

      2. The Agreement is Substantively Unconscionable.........................17

   D. The offending provisions of the Agreement cannot be severed resulting in the entire contract being unenforceable...............................................19

   E. The provision delegating the decision regarding the validity of the Agreement to an arbitrator is unenforceable ....................................19

IV. CONCLUSION ........................................................................................21

1

# TABLE OF AUTHORITIES

2

3
**Statutes**

4
9 U.S.C. § 2.................................................................................................9,20

5
California Civil Code §15550...................................................................... 11

6
Fed. Rules Civ. Pro. 26-37.....................................................................9, 18

7
**Cases**

8
*Armendariz vs. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, (2000)

9
...........................................................................................................9, 15, 18

10
*Ashbey v. Archstone Property Mgmt, Inc.*, 785 F. 3d 1320, 1323 (9th Cir. 2015).....9

11
*AT&T Mobility LLC vs. Concepcion*, 563 U.S. 333, 339).........................................10

12

13
*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643,
649 (1986) .............................................................................. 10, 19, 20

14

15
*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).............. 10, 11

16
*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F. 3d 1126, 1130 (9th Cir.
2000) ............................................................................................................ 9

17

18
*Circuit City Stores, Inc., v. Adams*, 279 F. 3d 889, 892 (9th Cir. 2002) ................. 14

19

20
*Cole v. Burn's Intern. Security*, 105 F. 3d 1465, 1482 (D.C. Cir 1197)…………...18

21
*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
508 U.S. 602, 622 (1993)........................................................................... 11

22

23
*Doctor's Assoc. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)……………………..10

24
*Donovan v. RRL Corp.*, 26 Cal.4th 261, 270 (2001) ................................................. 13

25

26
*Guieterrez v. Autowest, Inc.* 114 Cal. App. 4th 77, 89 (2003) ................................ 16

27
*Magno v. The College Network*, 1 Cal. App. 5th 277, 287 (2016)..................... 16, 19

28
*Pinela v. Neiman Marcus Group, Inc.*, 238 Cal. App. 4th 227, 256 (2016) ........ 15,19

*Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 81 (1st Cir. 2018) ................................................................................... 11, 13, 14

*Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 720–21 (N.D. Cal. 2012), aff'd, 549 F. App'x 692 (9th Cir. 2013). ........................................ 11, 13

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1109 (2018) .................................................................................... 19

*Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1285 (9th Cir. 2017) ... 12

*Penilla v. Westmont Corporation*, 3 Cal. App. 5th 205, 215 ............................ 4, 16

*Rapp v. Anaheim Terrace Care Center, LLC*, 2018 WL 3763325 .......................... 14

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) .............................................. 20

*Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 413 (1996) ...................... 11

*Sanford v. MemberWorks, Inc.* 483 F.3d 956, 962 (9th Cir.2007) .......................... 11

*Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 177-178 (2015)….. ……………………………………………………………………………..15, 17, 18

*Stirlen v. Supercuts,* 51 Cal. App. 4th 1519, 1542. .................................................. 18

*Ting v. AT &T*, 319 F 3d. 1126 (9th Cir. 2003) ....................................................... 15

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). ....................................................................................................................... 10

## I. INTRODUCTION

Defendant has moved to compel arbitration of Plaintiff's disability discrimination claims based on a purported agreement that the deaf and visually impaired Plaintiff never signed, had no awareness of, and would have been unable to read even if she had seen it.  Because an agreement to arbitrate was never formed in the first instance and even if a contract existed, it is both procedurally and substantially unconscionable and therefore may not be enforced, Defendant's motion must be denied.

## II. STATEMENT OF FACTS

### A. Background

Plaintiff DONNA DUARTE is a 54-year-old person who has been deaf since 2004 and also has a deteriorating vision condition. Ms. Duarte speaks American Sign Language (ASL) and requires the use of an ASL interpreter to orally communicate. Ms. Duarte has been a member of Mission Federal Credit Union (MFCU) since 1985. (Duarte Decl., ¶ 6). She filed suit against MFCU under the Americans with Disabilities Act ("ADA"), and also under two California civil rights statutes, the Unruh Act ("Unruh') and the Disabled Person's Act ("DPA"), alleging that MFCU had refused to provide her with effective communication at its branches and through its automated phone system.

Starting in 2011, Ms. Duarte's visual impairment required that she use an extra-large sized font size of 16 points in order to be able to read.  As of two years ago, she began requiring an 18-point font in order to read.  (Duarte Decl., ¶7).

MFCU has moved to compel arbitration based on its claim that Ms. Duarte received and agreed to be bound by an agreement to arbitrate contained within a four-page document, unsigned by either party, entitled "Mission Federal Credit Union Agreements and Disclosures," (hereinafter "Agreement"). (Doc. No. 8-2, Exh. A).[1]

---

[1] The bottom of Agreement contains the following reference "AA-D-1/19."  We presume that this refers to the date of this version of the agreement as being January

1    According to Defendant, the arbitration provisions were first added to its agreement

2    in 2012, close to three decades after Ms. Duarte had first joined MFCU. (Doc. No. 8-

3    2 at ¶5). By 2012, Ms. Duarte already required an extra-large font size to read.

4    (Duarte decl., ¶ 7). The text of the Agreement produced by Defendant is printed in a

5    very small 8.5 font except for headings that are printed in a still small 9.0 font.

6    (Menasche Decl., ¶ 2). Page two of the document contains a boxed paragraph,

7    beginning, "Binding Arbitration Agreement,"  which is also printed in 9 font size but

8    in capital letters.  The three paragraphs that follow describe the arbitration provisions

9    including the delegation clause (delegating the decision of arbitrability to the

10   arbitrator) in 8.5 type. (Menasche Decl. ¶2).

11        Ms. Duarte has no recollection of ever receiving the Agreement,  nor of receiving

12   any similar document or any written notification of the addition of an arbitration

13   provision either in person or by mail.  She also has no recollection of ever signing

14   any agreement to arbitrate or ever having such an agreement explained to her orally,

15   which would have required the use of an ASL interpreter or other technology. If Ms.

16   Duarte had received this or a similar document in the mail containing an arbitration

17   provision, or any written notice notifying her of the addition of an arbitration

18   provision which used the same font size, or any font size not large enough to

19   accommodate her visual impairment, she would have been unable to read it.  And if

20   she had been informed of an agreement to arbitrate which would waive her ability to

21   pursue civil rights claims in court, she would have declined to do so, and taken her

22   business elsewhere. (Duarte Decl., ¶¶ 1-16).

23        Defendant has produced no evidence with its motion to contradict the testimony

24   in Ms. Duarte's declaration: no agreement purportedly signed by Ms. Duarte when

25   she first joined MFCU in 1985 nor any agreement or document that she may have

26   signed at any point thereafter. (Doc. No. 8, 8-1, 8-2). Defendant's declarations do not

27

28

1, 2019.  No older versions of a membership agreement have been produced with
Defendant's motion.

provide any specific testimony that would show that Ms. Duarte was presented with or mailed any written agreement containing a binding arbitration clause nor that she was effectively notified of or had actual knowledge of the addition of an arbitration clause to her arrangement with MFCU. (Doc. No. 8-1, 8-2.)

## B. Provisions of the Agreement

The Agreement provided by Defendant is directed at new MFCU members at the time they first submit a membership application. (Doc. No. 8-2 at ¶ 2). It begins with: "Welcome to Mission Federal Credit Union" followed by a box stating: "Important Information About Opening a New Account."  The Agreement goes on to state: "When you sign the Membership Application, you and each joint member or authorized signer on your account agrees to this, and any other account you have with us, is subject to all Agreements and Disclosures, to applicable fee and rate schedules, and to our bylaws, policies and procedures."

Significant general provisions of the Agreement include:

1. **Introductory Paragraph:** "If any provision of these Agreements is deemed void or invalid, the rest of these Agreements will remain in full force and effect." (p.1.)
2. **Amendments:** "We reserve the right to amend the terms and conditions discussed in these Agreements and Disclosure at our discretion.  If you maintain your account(s) after the effective date of change, you indicate your agreement to the amendment(s).  Mission Fed will inform you of amendments affecting your rights and obligations in accordance with governing regulations." (p. 1.)
3. **Waiver of Rights**: "You hereby waive all defenses and claims as contained within all applicable statutes of limitations." (p. 1.)
4. **Membership Agreement**: "…You agree to be responsible for actual attorneys' fees and court costs if Mission Fed finds it necessary to take legal action against you to recover monies due as a result of your improper handling of your accounts." (p. 1.)
5. **Security Interest/Statutory Lien:** "By signing the Mission Fed Membership card and/or through your use of any account or service, you acknowledge and grant to Mission Fed a consensual lien and security interest in all share accounts and collateral securing loans whether direct, indirect, contingent or secondary, and regardless of source, except where prohibited by law….You agree to hold Mission Fed harmless against damages, expenses, liabilities and

losses as a result of any claim, action or demands arising from claims occurring as a result of the exercise of our lien rights including an administrative freeze or account holds." (p. 2.)

The binding arbitration portion of the Agreement on page 2 provides in relevant part as follows:

**"Binding Arbitration Agreement ("Agreement")** – Please read this Agreement carefully as it contains an arbitration provision that substantially limits your and Mission fed's right to bring a legal action in a judicial forum. Except as specifically provided herein, this agreement waives your right to trial before a judge in a court of law, including the right to a jury trial and the right to participate in a class action proceeding in arbitration."

**"Agreement to Arbitrate Disputes and Claims** – In order to provide a cost-effective, expeditious and impartial forum for the resolution of disputes which may arise between you and Mission Fed ("Parties"), the Parties hereby agree that all disputes between the Parties, shall be resolved by the following arbitration process…All disputes or claims of any nature, including but not limited to statutory, regulatory, common law, and equitable claims arising from or relating in any way to all agreements, relationships, accounts, loans or security agreements between the Parties…any rights, privileges or services you have received from us or may receive in the future…or the validity of this Agreement, shall be resolved by binding Arbitration unless otherwise limited by applicable law."

**"Arbitration procedure** – …Either party may submit a dispute to binding arbitration at any time. Each arbitration, including the selection of an arbitrator, shall be administered by the American Arbitration Association ("AAA") unless another arbitration administrator is mutually agreed upon by the Parties…Costs and fees for arbitration shall be determined by the arbitrator selected."

**"Rights Preserved** – This Agreement does not prohibit the Parties from exercising any lawful rights or using other available remedies to preserve, foreclose, or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain provisional or ancillary remedies such as injunctive relief, attachment garnishment, or the appointment of a receiver by a court of competent jurisdiction. Any applicable statutes of limitations shall apply to any arbitration proceeding between the Parties. The provisions of this Agreement to arbitrate shall survive termination, amendment or expiration of the relationship of the Parties…"

### C. Arbitration costs and procedures versus Federal litigation

1    The Commercial Arbitration Rules attached as Exhibit E to Defendant's

2 Declaration of Mark K. Worthge provide for payment of administrative filing fees

3 usually by the filing party. (Doc. No. 8-1., Exh. E). Administrative fees for a case

4 worth $75,000 or less are $1750, not including the hourly rate of the arbitrator.

5 (Menasche Decl., ¶ 3). Arbitrators typically charge anywhere from $200 to $1000

6 per hour or more plus expenses. This can add up to many thousands of dollars of

7 arbitration expenses for the parties. (Menasche Decl., ¶¶ 4-5). In contrast, in the U.S.

8 District Court, there is a $400 initial filing fee, and the cost of a jury, should the matter

9 proceed to jury trial. The parties are not responsible for paying the Judge's salary. In

10 arbitration, discovery is limited, with document exchange but no right to depositions

11 as exists in Federal Court.  (Doc. No. 8-1 at 39); *Fed. Rules Civ. Pro.* 30. The

12 arbitrator has the discretion to assess fees, expenses, and compensation as the

13 arbitrator determines appropriate. The award may include attorneys' fees "if all

14 parties have requested such an award or it is authorized by law or their arbitration

15 agreement." (Doc. No. 8-1 at 48).

16 **III. ARGUMENT**

17     **A. An Arbitration Agreement may be invalidated on the same basis as
other contracts.**

18

19     Under the Federal Arbitration Act (FAA), arbitration clauses, "shall be valid,

20 irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

21 the revocation of any contract."  9 U.S.C. § 2. Thus, while valid arbitration

22 agreements are generally enforceable, they may be invalidated on the same basis as

23 other contracts. *Armendariz vs. Foundation Health Psychcare Services, Inc.*, 24 Cal.

24 4th 83, 98 (2000).  For enforcement to take place, the parties must have reached an

25 agreement to arbitrate.  The party seeking to compel arbitration has the burden of

26 showing (1) whether a valid agreement exists; and, (2) whether the agreement

27 encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.

28 3d 1126, 1130 (9th Cir. 2000); *Ashbey v. Archstone Property Mgmt, Inc.*, 785 F. 3d

1320, 1323 (9th Cir. 2015).  In the absence of an agreement to submit a dispute to

arbitration, a party cannot be required to do so. *AT&T Techs., Inc. v. Communication Workers of America*, 475 U.S. 643, 648 (1986) (cites omitted).

Even if an agreement can be proven to exist that encompasses the current dispute, it may be "invalidated by 'generally applicable contract defenses, such as fraud, duress or unconscionability.'" *AT&T Mobility LLC vs. Concepcion*, 563 U.S. 333, 339 (quoting *Doctor's Assoc. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

### B. There was no mutual assent and therefore no valid contract to arbitrate was ever formed between MFCU and Ms. Duarte.

There are two types of challenges to a motion to compel arbitration that a party may make related to the validity of an arbitration clause. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). The first challenge is to the validity of the arbitration clause itself, and the second challenge goes to the validity of the entire contract. *Id*. A challenge to the validity of the arbitration clause itself may be considered by a court. *Id*. at 448–49.

Here, Ms. Duarte is specifically challenging the validity of the arbitration clause including its delegability provision contained in the Agreement. (Doc. No. 8-2, Exh. A). As such, this Court may properly decide whether a valid arbitration agreement exists. This stems from the basic principle that arbitration is a matter of contract law, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Ms. Duarte has never agreed to arbitration in the event of a dispute between her and MFCU. (Duarte Decl., ¶ 16). Ms. Duarte has no recollection of ever receiving the Agreement, nor of receiving any similar document or any written notification of the addition of the arbitration provision either in person or by mail. (Duarte Decl. ¶¶10-16). Even if she had received it, she would not be able to read it because of her visual impairments. (Duarte Decl., ¶3, ¶7). Further, even if Ms. Duarte had been informed about it orally, such communication would need to be through use of an ASL interpreter or some other technology because Ms. Duarte is a person who is deaf. (Duarte Decl., ¶3). In fact, it is the refusal of MFCU to provide

this service for Ms. Duarte which forms the basis of this lawsuit. Moreover, Defendant does not allege such an accommodation occurred in order for any oral communication about the arbitration provision to be accessible to Ms. Duarte. (Duarte Decl., ¶3).

Further, Ms. Duarte declared that had she known about the arbitration provision, she would have taken her business elsewhere. (Duarte Decl., ¶13); *See also Sanford v. MemberWorks, Inc.* 483 F.3d 956, 962 (9th Cir.2007) ("When one party disputes 'the making of the arbitration agreement,' the [FAA] requires that 'the court proceed summarily to the trial thereof' before compelling arbitration under the agreement.").

Under California law, the party seeking to compel arbitration has the burden of proving its existence by a preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 413 (1996); *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 720–21 (N.D. Cal. 2012), aff'd, 549 F. App'x 692 (9th Cir. 2013). This burden requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence. *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993). Therefore, for Defendant's Motion to Compel Arbitration to be granted, the Court must decide it is more likely than not that an agreement to arbitrate exists between Ms. Duarte and the MFCU according to the following elements.

Per California Civil Code §15550, the existence of a contract requires: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and, (4) a sufficient cause or consideration. In this case, Ms. Duarte never consented to the agreement to arbitrate. California Civil Code § 1565 specifies consent must be: (1) free, (2) mutual, and (3) communicated by each to the other. In this case, Ms. Duarte never gave her consent, therefore, mutuality is lacking. Further, Defendant has not provided any evidence showing Ms. Duarte communicated her consent to arbitration to MFCU. *See Nat'l Fed'n of the Blind v. The Container Store, Inc.* quoting *Buckeye*, 546 U.S. at 444 n.1 (A challenge to the formation of a contract can be done by showing that one party never agreed to the terms of the contract.).

1    Here, Defendant MFCU has not proven by a preponderance of the evidence the
2    existence of a valid arbitration agreement between it and Ms. Duarte. While
3    Defendant cites *Kilgore* for the proposition that, "The FAA leaves no place for the
4    exercise of discretion, but instead mandates that courts shall direct the parties to
5    proceed to arbitration on issues as to which an arbitration agreement has been
6    signed," Defendant fails to provide proof of Ms. Duarte's signature on any document
7    containing the   agreement to arbitrate. (Doc. No. 8, 8-1, 8-2). While MFCU
8    Representative Jeanine Dodman states in her declaration that to become a member,
9    one must fill out and sign a MFCU Membership Application and agree to be bound
10   by the terms of MFCU's account agreements and disclosures, Defendant offers no
11   evidence that this actually occurred in Ms. Duarte's specific case. (Doc. No. 8, 8-1,
12   8-2).

13   Further, Ms. Dodman declared that Ms. Duarte signed the Agreement upon
14   opening her account in 1985; however, there is no proof of this attached to Ms.
15   Dodman's declaration. (Doc. No. 8-2 at ¶3). Ms. Dodman also declared that Ms.
16   Duarte has reaffirmed her purported agreement to arbitrate on several occasions by
17   signing signature cards, but offers no proof that Ms. Duarte would have understood
18   that by signing these signature cards she was agreeing to binding arbitration in the
19   event of a dispute between her and the MFCU. *See Norcia v. Samsung Telecomms.*
20   *Am., LLC*, 845 F.3d 1279, 1285 (9th Cir. 2017) ("an offeree ... is not bound by
21   inconspicuous contractual provisions of which he was unaware."); (Doc. No. 8-2 at
22   ¶¶3-4.) Further, Ms. Dodman states that the arbitration clause was added in August
23   2012, and that Ms. Duarte would have been notified according to MFCU's governing
24   regulations, however, Defendant does not offer proof that Ms. Duarte was actually
25   sent or presented with the agreement to arbitrate, and the governing regulations
26   referenced are not included. (Doc. No. 8-2 at ¶ 2). According to Ms. Duarte, it was
27   not until this litigation that she became aware of the Agreement, including the
28   agreement to arbitrate. (Duarte Decl., ¶9.) As such, Defendant offers no proof of
     mutual assent of the parties, as is its burden, to show the formation of a valid

agreement to arbitrate. *See Donovan v. RRL Corp.*, 26 Cal.4th 261, 270 (2001) ("An essential element of any contract is the consent of the parties, or mutual assent.").

Additionally, and what is at the heart of this case, Defendant does not show how the Agreement was meaningfully and effectively communicated to Ms. Duarte even if it had been presented to her in the branch or by mail. Here, the Agreement is written in 8.5 to 9.0 font size, and according to Defendant, was only first available in August of 2012, at which time Ms. Duarte was only capable of reading 16-point font because of her visual impairment. (Menasche Decl. ¶2; Duarte Decl., ¶7; Doc. No. 8-2 at ¶5). Defendant provides no evidence or testimony regarding how this agreement to arbitrate would have been meaningfully communicated to Ms. Duarte as she is a person who is deaf. (Duarte Decl., ¶3). MFCU does not contend that it communicated the arbitration clause to her through the use of an ASL interpreter or any other technology which would have allowed Ms. Duarte to understand she was agreeing to binding arbitration by signing MFCU signature cards. Ms. Duarte declared that if she had known about the arbitration clause, she would have taken her business elsewhere. (Duarte Decl., ¶ 13); *See Newton v. American Debt Services, Inc.*, 854 F.Supp.2d 712 (N.D.Cal.2012) (A consumer's application for services with a debt settlement company did not create an agreement to arbitrate, where there was no showing that the arbitration terms, which were incorporated by reference into the application, were available to the consumer when she signed the application.).

In an analogous case, a court denied a defendant's motion to compel arbitration because the defendant did not prove the agreement to arbitrate was reasonably communicated to plaintiffs, who were people who are blind, and as such, there was no mutual assent. Similar to MFCU, the defendant in that case did not "suppl[y] any evidence to contradict the plaintiff[s'] claim that [they] never read" or were otherwise made aware of the terms and conditions of the loyalty program to which the agreement to arbitrate was attached. *See Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 81 (1st Cir. 2018).

1    Moreover, in *Nat'l Fed'n of the Blind*, the contention that defendant store
2  associates were present to inform the in-store plaintiffs of the terms and conditions
3  applicable to the loyalty program was unavailing to the court without any evidence
4  that it was actually done. *Nat'l Fed'n of the Blind v. The Container Store, Inc*., 904
5  F.3d 70, 83 (1st Cir. 2018). Like the court in that case, based upon the lack of any
6  evidence that Ms. Duarte had any knowledge, actual or constructive, that the
7  arbitration terms applied to her membership with MFCU, this Court should conclude
8  that MFCU failed to meet its burden of establishing that an agreement to arbitrate
9  was ever consummated between MFCU and Ms. Duarte. *Id.* 904 F.3d at 84; *See also*
10  *Rapp v. Anaheim Terrace Care Center, LLC*, 2018 WL 3763325 (a court denied
11  defendants' motion to compel arbitration because defendants did not explain how the
12  contents of an agreement to arbitrate were adequately explained to the plaintiff who
13  was a woman who was deaf and required the use of ASL adaptive technologies to
14  communicate with the world, and there was no indication that any such technology
15  was used.).

16    In conclusion, Ms. Duarte respectfully requests this Court deny Defendant's
17  Motion to Compel Arbitration and Stay Judicial Proceedings because, as
18  demonstrated above, no valid agreement to arbitrate exists between Ms. Duarte and
19  MFCU.

**C. Even if a contract existed to arbitrate, it is both procedurally and substantively unconscionable and cannot be enforced.**

22    Federal courts apply ordinary state contract law principles to determine the
23  validity of a contract to arbitrate. *Circuit City Stores, Inc., v. Adams*, 279 F. 3d 889,
24  892 (9th Cir. 2002).[2] Under California law, any contract, including an agreement to

---

[2] Defendant's claim in its opening brief that the defense of unconscionability only
applies to employees in employment cases misstates the law. Cases outside of the
employment context include *Penilla v. Westmont Corp*, 3 Cal. App. 5th 205 (2016)
(involving mobile home park residents who brought claims under contracts, torts,

arbitrate, that is both procedurally and substantively unconscionable, cannot be enforced. *Armendariz* at 98-99.  Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power while the substantive element refers to overly harsh or one-sided results. *Pinela v. Neiman Marcus group, Inc*., 238 Cal. App. 4th 227, 240 (2015). Though both elements must be present, they need not be present in the same degree. Courts apply a sliding scale in which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the terms are unenforceable and vice versa." *Id*., citing *Serafin v. Balco Properties Ltd*., *LLC*, 235 Cal. App. 4th 165, 178 (2015); *See also Ting v. AT &T*, 319 F 3d. 1126 (9th Cir. 2003).

### 1. The Agreement is procedurally unconscionable to a high degree.

Oppression is held to exist when there is a "contract of adhesion." A contract of adhesion is a standardized contract imposed and drafted by the more powerful party where there is an inequality of bargaining power and therefore no real negotiation or meaningful choice but merely the opportunity to adhere to the contract *as is* or reject it ("take it or leave it.") *Pinela* at 242-243 (cites omitted). A contract of adhesion contains at least a minimum degree of procedurally unconscionability.  *Pinela* at 244.

Unquestionably, the Agreement herein is a typical "take it or leave it" adhesion contract drafted by the more powerful party, MCFU, with no opportunity for Plaintiff or other members to negotiate its terms.  Even if she had been informed of the addition of an arbitration provision, Plaintiff's only option would have been to close her account. *See Ting v. AT&T* in which the contract was considered procedurally

---

and the Fair Employment and Housing Act); and, *Ting v. AT&T*, 319 F. 3d 1126 (9th Cir. 2003) (involving a residential customer suing a telecommunications carrier under state contract and consumer protection laws).

unconscionable when the customer's only option, if he wished to reject the company's amendment, was to close the account. *Ting* at 1150.

But in the instant case there is more – a strong element of "surprise" that results in a high degree of procedural unconscionability. "Surprise" involves the extent to which the terms of the bargain were hidden– in this case the addition of an arbitration provision almost decades after Plaintiff's account was first opened with no evidence of Plaintiff's receipt of adequate notice of its existence or indeed, any notice at all. *See Magno v. The College Network*, 1 Cal. App. 5th 277, 287 (2016) (where a high degree of procedural unconscionability was found based on the fact that "Plaintiffs were young, were rushed through the signing process, did not see the arbitration language 'buried on the back page of the preprinted carbon paper forms,' and did not separately initial the arbitration clause."); *See also Guieterrez v. Autowest, Inc*. 114 Cal. App. 4th 77, 89 (2003) (finding procedural unconscionability where a particularly inconspicuous arbitration clause on a preprinted automobile lease was not negotiated or separately initialed).

Language barriers can also support a finding of procedural unconscionability. *See Penilla v. Westmont Corporation*, 3 Cal. App. 5th 205, 215 (the failure to translate the agreement for residents who spoke only Spanish provided evidence of procedural unconscionability). In the instant case, even if Plaintiff had been provided written information adding an arbitration clause, she would have been unable to read it due to her disabilities. Oral communication would also not have been effective without use of an ASL interpreter. Consequently, the existence of mandatory arbitration provisions came as a complete surprise to Ms. Duarte.

## 2. The Agreement is Substantively Unconscionable

The substantive element of unconscionability examines the agreement for whether the terms are overly harsh, unduly oppressive, or unfairly one-sided - that is, unreasonably favorable to the more powerful party. *Magno* at 287-288.

There are multiple aspects of the Agreement that reveal its extreme one-sided nature. Specifically:

(1) MFCU reserves the right to amend its terms at its discretion.  How Credit Union members are to be notified of changes is unclear, with the only reference being to undefined "governing regulations."

(2) Under the section "Rights Preserved," legal action in Court is authorized to preserve, foreclose, or obtain possession of real or personal property, and obtain the appointment of a receiver, which are the types of claims MFCU is likely to bring against its members.  However, claims likely to be brought by its members against MFCU would be covered by the mandatory arbitration clause.

(3) In the case of MFCU taking legal action against its members for improper handling of accounts, MFCU is entitled to fees and court costs; yet for other types of cases, most likely involving claims of its members, fees and costs are to be determined by the arbitrator.

(4) Under the section "Waiver of Rights," the customer waives applicable statutes of limitations, while MFCU does not. Statutes of limitations are however enforced in the arbitration forum, where its members' claims pursuant to the Agreement would end up being adjudicated.

(5) MFCU has unimpeded lien rights with customers holding MFCU harmless for any claims resulting from the exercise of such lien rights.

Substantive unconscionability has been found to exist when the more powerful party, such as an employer, may avoid arbitration to adjudicate its claims but the weaker party cannot.  *See Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 177-178 (2015).  This is clearly the case under MFCU's Agreement, where court action is an option for MFCU but not for its members.

The unimpeded lien rights, one-sided provision for attorneys' fees and waiver of statutes of limitation also support a conclusion of substantive unconscionability. Moreover, similar to employees' claims under civil rights statutes, arbitration agreements may not limit or waive statutory imposed remedies available to Ms.

1   Duarte.     As explained in *Armendariz*, "an agreement to arbitrate a statutory claim
2   implicitly incorporates 'the substantive and remedial provisions of the statute'…"
3   *Armendariz*, at 103. (Citations omitted.)   An Arbitration agreement involving
4   employment rights has been held to be lawful "only if it (1) provides for neutral
5   arbitrators, (2) provides for more than minimal discovery, (3) provides for all types
6   of relief that would otherwise be available in court, and (4) does not require
7   employees to pay either unreasonable costs or any arbitrators' fees or expenses as a
8   condition of access to the arbitration forum…"*Armendariz* at 102, citing *Cole v.*
9   *Burn's Intern. Security*, 105 F. 3d 1465, 1482 (D.C. Cir 1197). The same reasoning
10  should apply in the instant case involving disability discrimination claims under the
11  ADA,  Unruh, and DPA.

12      The arbitration forum is financially prohibitive, far exceeding court costs, and
13  potentially costing Plaintiff many thousands of dollars in administrative and
14  arbitrator fees. (Menasche Decl., ¶ ¶4-5).  In addition, the Commercial Arbitration
15  rules produced by Defendant provide for only limited discovery, in the form of an
16  exchange of documents, and no depositions. (Doc. No. 8-1, Exh. E). This contrasts
17  to the more complete discovery available under the Federal Rules of Civil Procedure.
18  *See* Fed. Rules Civ. Pro. 26-37. The Agreement also grants the arbitrator full
19  discretion to award attorneys' fees, running counter to attorneys' fees provisions
20  contained in the ADA and state civil rights laws providing for a fee award to
21  prevailing plaintiffs only.  *Serafin,* 235 Cal App. 4th at 183.

22      The Agreement provides MFCU with "more rights and greater remedies than
23  would be otherwise be available" while plaintiff is deprived of "significant rights and
24  remedies that they would normally enjoy." *Stirlen v. Supercuts,* 51 Cal. App. 4th
25  1519, 1542. The Agreement is therefore so unfairly one-sided and lacking in
26  mutuality that it must be held to be substantively unconscionable and thus
27  unenforceable.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D. The offending provisions of the Agreement cannot be severed resulting in the entire contract being unenforceable.**

Faced with a contract with one or more unconscionable provisions a court must decide whether they may be severed or the agreement is so 'permeated' by unconscionability that the whole agreement must be voided. *Magno*, at 292; *Pinela v. Neiman Marcus Group, Inc*., 238 Cal. App. 4th 227, 256 (2016). Voiding the agreement is particularly appropriate where, as here, there is more than one offending contract provision or where it would be necessary to rewrite and augment the agreement to cure it. *Magno*, at 292; *Pinela* at 255-256.

Like *Pinela*, here, the unconscionability "permeates" the Agreement to such a degree that it should be voided in its entirety. *Id.*

**E. The provision delegating the decision regarding the validity of Agreement to an arbitrator is unenforceable.**

It is well established that the question of arbitrability of a dispute is for a court and not the arbitrator to decide in the first instance, unless the parties clearly and unmistakably provided otherwise. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986).

A delegation clause is also subject to the same challenges of lack of formation and unconscionability as any other contract including the agreement to arbitrate as a whole. *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1109 (2018). Such challenges to the delegation clause are for a court to decide. *Id.*

Defendant's argument that an arbitrator and not this Court has the jurisdiction to decide the matter of arbitrability is unpersuasive. Specifically, Defendant improperly contends, "The United States Supreme Court has held that courts may not override contracts which delegate arbitrability, even if the court thinks that the arbitrability claim is wholly groundless," and cites to two cases which do not support this contention. (Doc. No. 8 at 7-8).

1    In the first case, the Supreme Court held the court and not the arbitrator is to decide

2 in the first instance whether parties agreed to arbitrate. *AT&T Technologies, Inc. v.*

3 *Communications Workers*, 475 U.S. 643, 651 (1986). The second case involves a

4 matter where the plaintiff argued the entire contract, and not the arbitrability clause,

5 was unenforceable, and the Supreme Court found that under the FAA, if a party

6 challenges the validity of the precise agreement to arbitrate at issue, a federal court

7 must consider the challenge before ordering compliance with that agreement.

8 However, if a party challenges the enforceability of the agreement as a whole, the

9 challenge is for the arbitrator. 9 U.S.C.A. §§ 2, 4; *Rent-A-Ctr., W., Inc. v. Jackson*,

10 561 U.S. 63 (2010). Here, Ms. Duarte is not challenging the agreement as a whole;

11 rather, the agreement to arbitrate itself. As such, our case is distinguishable from

12 *Rent-A-Ctr.* and in line with its rule as well as the holding from *AT&T Technologies,*

13 *Inc.*

14    There is no evidence that Ms. Duarte ever assented to or even was notified of any

15 agreement to arbitrate.  There is likewise no evidence that Ms. Duarte agreed to or

16 was aware of a delegation clause delegating the decision of arbitrability to an

17 arbitrator.  That clause was indeed buried in the small print that Ms. Duarte could not

18 have read due to her vision impairment even if the document had been presented to

19 her. Both for reasons of lack of contract formation and unconscionability, the

20 delegation provision cannot be enforced.

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV. CONCLUSION

Based on the above, Defendant's Motion to Compel Arbitration and Stay Judicial Proceedings should be denied.

Respectfully submitted,

Dated:  October 21, 2019        By:    */s/ Ann E. Menasche*
                                       Ann E. Menasche SB#74774
                                       Ann.menasche@disabilityrightsca.org

                                By:    /s/ Nichole Marie Mendoza
                                       Nichole.mendoza@disabilityrightsca.org

                                       ***Attorneys for Plaintiffs***