1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DONNA DUARTE, | Case No.: 3:19-CV-01441-AJB-KSC |
| 12              Plaintiff, | **ORDER DENYING DEFENDANT MISSION FEDERAL CREDIT UNION'S MOTION TO COMPEL ARBITRATION** |
| 13  v. | |
| 14  MISSION FEDERAL CREDIT UNION,              Defendant. | |
| 15 | **(Doc. No. 8)** |

16         Presently before the Court is Defendant Mission Federal Credit Union's ("MFCU")

17 motion to compel arbitration. (Doc. No. 8.) Plaintiff Donna Duarte ("Plaintiff") opposed

18 the motion, (Doc. No. 11), and MFCU replied, (Doc. No. 12). For the reasons set forth

19 below, the Court **DENIES** MFCU's motion to compel arbitration.

20 **I.      BACKGROUND**

21         Plaintiff brings a civil rights complaint against MFCU for alleged violations of the

22 Americans with Disabilities Act ("ADA"), Unruh Civil Rights Act ("Unruh"), and

23 Disabled Persons Act ("DPA"). (Doc. No. 11 at 5.)  This action arises out of events starting

24 in 2018 from MFCU's alleged repeated refusals to provide Plaintiff with the necessary

25 auxiliary aids and services she requires to communicate effectively due to her hearing

26 disability and visual impairment. (Doc. No. 1 ¶ 2.)

27
28

1

MFCU presently petitions this Court for an order compelling the arbitration of Plaintiff's claims and for a stay of these proceedings. (*See generally* Doc. No. 8.) MFCU's petition is brought under the Federal Arbitration Act ("FAA") and is made on the grounds that Plaintiff's claims are subject to a valid and enforceable arbitration provision, which requires Plaintiff to arbitrate her claims and waive her right to a jury trial. (*Id.*)

Plaintiff is a 54-year-old person who has been deaf since 2004 and has a deteriorating vision condition. (Doc. No. 11 at 5.) Plaintiff speaks American Sign Language ("ASL") and requires the use of an ASL interpreter to orally communicate. (*Id.*) In 2011, Plaintiff's visual impairment required that she use a 16-point font in order to read and as of two years ago, she began requiring an 18-point font in order to read. (*Id.*)

Plaintiff has been a member of MFCU since 1985. (Doc. No. 8 at 3.) Defendant asserts that, "[u]pon joining MFCU, all members execute, become party to, and agree to be bound by MFCU's Account Agreement and Disclosures," (hereinafter "Agreement"). (Doc. No. 8 at 3.) The Agreement details that "the terms and conditions can be amended at MFCU's discretion, and by maintaining an account after the effective date of change, a member indicated his or her agreement to the amendment." (Doc. No. 12 at 2.)

The arbitration provision at issue was added to the Agreement effective July 15, 2012. (Doc. No. 12 at 2.)  Defendant contends that Plaintiff was notified of the addition of the arbitration provision on four separate occasions by mail in the month of July 2012. (*Id.*) More specifically, the notification and actual text of the arbitration provision were included in "each of the four monthly account statements for June 2012 (one for each of Plaintiff's then active accounts with MFCU)." (*Id.*) Defendant asserts that the statements were provided to Plaintiff by mail in July of 2012 and notified Plaintiff that there had been "'[i]mportant updates to [her] Account Agreements and Disclosures effective July 15, 2012' and told to '[p]lease read this information carefully.'" (*Id.*)

Additionally, Defendant presents that Plaintiff reaffirmed her agreement to the terms and conditions of the Agreement by filling out and signing multiple MFCU signature cards. (Doc. No. 12 at 1.) The signature cards were signed and completed by Plaintiff on March

6, 1996, May 21, 2007, November 20, 2009, and September 22, 2011. (Dodman Decl. Exs. F–I.) Immediately above Plaintiff's signature on each of the signature cards, it states that "your signature signifies that you have received and read Mission FCU's Account Disclosure and Agreements and have read the Membership Agreement and agree to abide by its terms and conditions." (*Id.*)

## II.   LEGAL STANDARD

The FAA governs the enforcement of arbitration agreements involving interstate commerce. *See* 9 U.S.C. § 2. Pursuant to § 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the] agreement." *Id.* § 4.

Given the liberal federal policy favoring arbitration, the FAA "mandates that district courts shall direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, in a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 955–56 (9th Cir. 2012) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *Id.*

While generally applicable defenses to contract enforcement, such as fraud, duress, or unconscionability, may invalidate arbitration agreements, the FAA preempts state law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). There is generally a strong policy favoring arbitration, which requires any doubts to be resolved in favor of the party moving to compel arbitration. *Moses H. Cone Mem.*

3

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). However, where a party challenges the existence of an arbitration agreement, "the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

## III. DISCUSSION

MFCU urges the Court to compel arbitration of Plaintiff's claims against MFCU under the FAA and relevant case law because a valid agreement to arbitrate exists and must be enforced. (Doc. No. 8.) In opposition, Plaintiff argues that mutual assent is lacking, and that even if a contract to arbitrate did exist, it is both procedurally and substantively unconscionable. (Doc. No. 11.) The Court will first address the issue of assent. Afterwards, the Court will turn to the issue of unconscionability.

### A.    The Validity of the Arbitration Provision

The Court's first task in determining whether this action should proceed to arbitration is whether a valid agreement to arbitrate exists. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). The party seeking to compel arbitration has the burden of showing that a valid agreement exists. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). There are two types of challenges to a motion to compel arbitration that a party may make related to the validity of an arbitration provision. *Buckeye Check Cashing, Inc.*, 546 U.S. at 444. The first challenge is to the validity of the arbitration provision itself, and the second challenge goes to the validity of the entire contract. *Id.* A challenge to the validity of the arbitration provision itself may be considered by a court. *Id.* at 448–49. A court may consider this because "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

Per California Civil Code §15550, the existence of a contract requires: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and, (4) a sufficient cause or consideration. California Civil Code § 1565 specifies consent must be: (1) free, (2) mutual, and (3) communicated by each to the other.

4

Plaintiff explains that, "Ms. Duarte is specifically challenging the validity of the arbitration clause." (Doc. No. 11 at 11.)  Plaintiff contends that she never gave her consent to be bound by this arbitration provision. (*Id.*) Further, Plaintiff argues that Defendant has failed to introduce evidence of consent and the communication thereof. (*Id.*) Plaintiff declared that she has no recollection of ever receiving the arbitration provision or agreeing to be bound by its terms. (*Id.*) Plaintiff stands firm in that she never signed a document containing the arbitration provision and, because of her disabilities, Defendant has failed to introduce evidence of how the agreement to arbitrate was meaningfully communicated to her as a person who is deaf and has visual impairments. (*Id.*)

Defendant initially argues that the issue of validity is for an arbitrator to decide because Plaintiff seems to be calling into question the existence of the Agreement as a whole in portions of her Opposition and not solely the arbitration provision. (Doc. No. 12 at 3; Doc. No. 11 at 10–13.) Defendant argues that Plaintiff was, in fact, a party to the arbitration provision because she was given adequate notice of the amendment in July 2012 in the form of mailed notices. (Doc. No. 12 at 5.)

The Court agrees with Plaintiff that there is a lack of evidence that she assented to the terms of the arbitration provision because her visual impairment physically kept her from seeing or understanding the terms on the notices. Defendant has failed to introduce evidence that Plaintiff was able to understand and agree to the arbitration provision on the monthly account statements that she was unable to read. *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 83 (1st Cir. 2018) (finding there was no mutual assent when the defendant did not "suppl[y] any evidence to contradict the plaintiff[s'] claim that [they] never read" or were otherwise made aware of the terms and conditions of the loyalty program to which the agreement to arbitrate was attached). The arbitration provision has been effective in the Agreement since July 15, 2012, and Defendant included a notice of the addition of the provision in Plaintiff's four monthly account statements for June 2012 that were mailed to Plaintiff in July 2012. (Doc. No. 12-1.) Therefore, the signature cards that Plaintiff signed, reaffirming her agreement to the original Agreement, in 1995, 2007,

5

2009, and 2011 did not contain the arbitration provision, and are not relevant to the analysis of whether Plaintiff assented to the arbitration provision. (*Id.*) Plaintiff was mailed the four notices in her monthly account statements in July 2012 and Defendant has failed to establish that the font used on the notices was at least 16-point. (*Id.*) Most notably, Plaintiff has declared under penalty of perjury that by around 2011, she "required the use of 16-point font to read." (Doc. No. 11-1 at 2.) Based on that fact alone, Plaintiff was physically unable to read the notices that informed her of the arbitration provision due to her visual impairment in 2012 and, absent any other evidence that she was made aware of the arbitration provision, the Court concludes that there was no valid arbitration provision formed. Therefore, because a valid arbitration provision did not exist due to Plaintiff's lack of assent, she is not bound by the arbitration clause. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (confirming that a court may hear a party's challenge to a motion to compel when the validity of the arbitration clause itself is being contested). The Court will briefly address Plaintiff's argument that the arbitration provision is unconscionable, however, Plaintiff's lack of assent renders the arbitration provision unenforceable.

### B.  Unconscionability of the Arbitration Provision

Federal courts apply ordinary state contract law principles to determine the validity of a contract to arbitrate. *Circuit City Stores, Inc., v. Adams*, 279 F. 3d 889, 892 (9th Cir. 2002). Under California law, any contract, including an agreement to arbitrate, that is both procedurally and substantively unconscionable, cannot be enforced. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 98–99. Plaintiff bears the burden of proving procedural and substantive unconscionability. *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1164 (2004).

#### 1.  Procedural Unconscionability

Procedural unconscionability requires oppression or surprise. *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (Ct. App. 1982). Oppression occurs where a contract involves a lack of negotiation and meaningful choice; surprise occurs where the

allegedly unconscionable provision is hidden within a printed form and not easily ascertainable. *Id.*

First, Plaintiff argues that oppression exists here because the Agreement is a contract of adhesion and, thus, is procedurally unconscionable. (Doc. No. 11 at 15.) Plaintiff asserts that the Agreement is a contract of adhesion because of the inequality in bargaining power between the parties and the lack of a meaningful choice Plaintiff had to negotiate. (*Id.*) Plaintiff contends that the fact that Plaintiff's only option would have been to close her account, had she known about the arbitration provision, supports the conclusion that the Agreement is procedurally unconscionable. (*Id.*) Second, Plaintiff argues that the Agreement is procedurally unconscionable because a strong element of surprise is present. (*Id.* at 16.) Plaintiff contends that she "has no recollection of ever receiving the Agreement, nor of receiving any similar document or any written notification of the addition of the arbitration provision either in person or by mail." (*Id.* at 10, 16.) Further, Plaintiff argues that even if she had been provided written information adding an arbitration clause, she would have been unable to read it due to her disabilities, therefore the existence of the arbitration provision was a complete surprise. (*Id.* at 16.)

In regard to oppression, Defendant argues that business conditions under which a contract is formed weigh upon the question of unconscionability and the customer relationship. (Doc. No. 12 at 6.) Further, Defendant distinguishes the cases from those on which Plaintiff relies by arguing that oppression is absent because this is not an employment context, MFCU did not dissuade customers from doing business elsewhere, and MFCU was not one of the few bank options in the area. (*Id.* at 7.) Instead, Defendant emphasizes that MFCU is just one of numerous financial institutions in the San Diego area that Plaintiff has the option of doing business with, thus, a claim of oppression and lack of meaningful choice is unavailing. (*Id.*) Second, Defendant argues that there was no element of surprise because Plaintiff became a party to the Agreement in 1985 and to the arbitration provision in 2012 after being provided with four notices of it. (*Id.*) Further, the arbitration

provision is found on page two of the four-page Agreement and is capitalized, in bolded font, and boxed to draw attention to it. (*Id.*)

Plaintiff has failed to provide sufficient evidence to conclude that the arbitration provision is procedurally unconscionable because it is oppressive. While Plaintiff relies on *Pinela* for the statement that a contract of adhesion contains a minimum degree of procedural unconscionability, the existence of an adhesive contract is just the beginning of the analysis into whether other factors are present to render the contract unenforceable. *See Pinela v. Neiman Marcus group, Inc.*, 238 Cal. App. 4th 227, 242 (explaining that when determining whether a contract is procedurally unconscionable "the adhesive nature of an agreement under challenge thus 'heralds the beginning, not the end, of our inquiry into its enforceability'"). Further, in *Pinela*, plaintiff was an employee of defendant and a complex choice of law issue weighed heavily on the lack of meaningful choice to negotiate the arbitration provision. *Id.* at 242–44. Conversely, here, Plaintiff is a customer of MFCU and had full ability to take her business to the many financial institutions in San Diego that offer comparable services. *See Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 768 (1989) (stating that "if 'oppression' refers to the 'absence of a meaningful choice,' then the existence of a 'meaningful choice' to do business elsewhere must tend to defeat any claim of oppression"). Plaintiff admits, "had I known about the arbitration provisions, I would have taken my business elsewhere." (Doc. No. 11 at 11; Duarte Decl. ¶ 13). Further, in *Ting*, the court found procedural unconscionability by using the facts that only one other major company was a viable option to switch to and defendant dissuaded customers from seeking other options. *See Ting v. AT&T*, 319 F. 3d 1126, 1149 (9th Cir. 2003). Here, similar facts are absent.

Next, Plaintiff has failed to introduce sufficient facts to conclude that the arbitration provision is procedurally unconscionable because it came as a surprise to Plaintiff. Plaintiff relies on *Penilla*, where the failure of defendant to translate an agreement into Spanish for residents provided evidence of procedural unconscionability. *See Penilla v. Westmont Corporation*, 3 Cal. App. 5th 205, 215. *Penilla* was in the context of housing, where tenants

8

were under "severe pressure" to agree, and the defendants had prior knowledge that a number of tenants only spoke Spanish yet still distributed the agreement in English only. *Id.* Here, there is no evidence that Defendant knew about Plaintiff's visual impairment in 2012 and this case is in the context of a customer and financial institution, not housing, nor was Plaintiff under any pressure to decide a certain way. Therefore, the Court concludes that the arbitration provision is not procedurally unconscionable.

### 2.     Substantive Unconscionability

Substantive unconscionability examines the fairness of the agreement for whether the terms are overly harsh, unduly oppressive, or unfairly one-sided. *See Magno v. The College Network*, 1 Cal. App. 5th 277, 285 (2016).

Plaintiff argues that portions of the Agreement are extremely one-sided. (Doc. No. 11 at 17.) For example, Plaintiff argues that because court action is an option for MFCU but not for its members and MFCU's amendment clause is one-sided. (*Id.*) Plaintiff also argues that the arbitration forum is financially prohibitive because it exceeds court costs and could potentially cost Plaintiff "many thousands of dollars in administrative and arbitrator fees." (*Id.*) Additionally, Plaintiff maintains that the discovery process is more limited under Commercial Arbitration rules and the awarding of fees allows for discretion on the part of the arbitrator. (*Id.*) Further, Plaintiff contends that the arbitrator's discretion to award fees runs counter to the applicable laws of the case. (*Id.*) Finally, Plaintiff stands firm in that MFCU is granted greater remedies while Plaintiff is deprived, thus, making the Agreement unfairly one-sided. (*Id.*)

Defendant argues that the Ninth Circuit has rejected the notion that an amendment clause can render a contract or provision unconscionable because the covenant of good faith and fair dealing prevents it. (Doc. No. 12 at 8); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1473 (2013) ("unilateral modification provision is not substantively unconscionable"). Defendant contends that the Agreement reserving court action for a financial institution is not unfair because it is in place solely to protect Defendant's own security interests in the

9

event that a court is needed to effectuate a foreclosure or related ruling. (*Id.*) Further, Defendant stands firm that the arbitration forum is not financially prohibitive, and Plaintiff's presentation of costs were speculative and misrepresented. (*Id.*) Defendant presents that in accordance with the American Arbitration Association's Consumer Arbitration Rules ("AAA Rules"), Plaintiff would pay a single filing fee of no more than $200, whereas her court filing fee was $400. (*Id.*) Additionally, Defendant argues that the arbitration fees are not as high as Plaintiff suggests, and the assertion is irrelevant when Plaintiff has failed to show that litigation costs would be lower or that her financial circumstances prohibit her from affording arbitration. (*Id.*) Finally, Defendant presents that the Agreement states the arbitration shall be administered by the AAA's rules, which awards fees and costs "in accordance with the law(s) that applies to the case," and thus, Plaintiff's argument is unavailing. (*Id.*)

Plaintiff has failed to provide sufficient evidence that the arbitration provision is so unfair and one-sided that it must be deemed unenforceable. It is not overly harsh or unreasonable for a financial institution to contractually preserve their security interests that must be resolved by judicial action in a court of law. The Court agrees with Defendant that the "Membership Agreement," "Security Interest/Statutory Lien," and "Rights Preserved" clauses are limited to protecting the financial institutions security interests and not so unduly oppressive and harsh to be unenforceable. Plaintiff, again, attempts to hold the unconscionability standard in the employment context to this context between a customer and a financial institution. This argument is unavailing because the relationship between an employee and employer contains a more complex dynamic of personal relations and economic pressures. Plaintiff argues that "multiple aspects of the Agreement are one-sided" and, thus, if Plaintiff is arguing that the Agreement is unconscionable because of reasons having to do with disability discrimination, "the same reasoning should apply in the instant case involving disability discrimination claims under the ADA, Unruh, and DPA," that is the precise reason it should be handled by an arbitrator. (Doc. No. 11 at 18); *See Nagrampa v. MailCoups Inc.*, 469 F.3d 1257, 1263–64 (9th Cir. 2006) (stating "when

the crux of the complaint challenged the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator"). Plaintiff alleges that arbitration will "far exceed court costs" and "potentially cost Plaintiff many thousands of dollars," but fails to provide evidence that litigation costs would, in fact, be lower or that she would have difficulty paying for the costs of arbitration. (Doc. No. 11 at 18); *See Woodside Homes of Cal., Inc. v. Super. Ct.*, 107 Cal. App. 4th 723, 733 (2003) (ruling against substantive unconscionability because plaintiff failed to "demonstrate at the least that the fees they are likely to pay are in fact greater than those which would accrue in litigation before the court" and that the additional expense "would be impossible or unreasonably difficult for them to pay"). The Court agrees with Defendant that an award of fees will not run afoul of the statutory rights applicable to the case because the discretion given to the Arbitrator will be executed "in accordance with the law(s) that applies to the case." (Doc. No. 12 at 9); *See* AAA Rules, Rule 44. Therefore, the Court concludes that the arbitration provision is not substantively unconscionable.

## IV. CONCLUSION

In light of the foregoing, the Court **DENIES** MFCU's motion to compel arbitration. **IT IS SO ORDERED**.

Dated: August 14, 2020

Hon. Anthony J. Battaglia
United States District Judge

11